NATIONAL UNION FIRE INSURANCE COMPANY *v.* WRIGHT.

Opinion delivered January 28, 1924.

1. INSURANCE—PAYMENT OF PREMIUM—EVIDENCE.—In an action on a fire insurance policy, evidence that insurer's agent, having authority to issue policies, to collect premiums and to issue receipts therefor, accepted insured's check in payment of the first premium and agreed to treat it as a cash payment until a certain time, prior to which the property was burned, *held* to justify submission to the jury of the question whether the premium was paid.

2. INSURANCE—CHANGE OF OWNERSHIP—WAIVER OF FORFEITURE.—Where, after taking out a fire insurance policy on buildings and personal property, the insured notified the insurer's general agent that he had sold the buildings, and, if the policy was not still good as to the personal property, he wanted the policy rewritten to cover the personal property alone, and he was advised by the agent that the policy was in effect as to the personal property, the insurer will be held to have waived the right to declare a forfeiture on account of a change in the ownership of the buildings.

3. INSURANCE—WAIVER OF PROOF OF LOSS—AUTHORITY OF LOCAL AGENT.—A local agent of a fire insurance agent, having power to issue policies and collect premiums, has apparent authority to waive proofs of loss, and will be held to have done so when he leads the insured to believe that proof of loss will not be required or that the notice given or action taken by the insured will be treated as a compliance with this requirement.

4.   INSURANCE—WAIVER OF PROOF OF LOSS—INVESTIGATION.—An insurance company does not waive any defense it may have against a policy by sending an adjuster to make an investigation.

5.   APPEAL—RIGHT TO APPEAL—INCONSISTENT ACTION.—Where, in an action on a fire insurance policy, insured admitted that he owed to the insurer an indebtedness witnessed by an unpaid note and check, the fact that, after the rendition of a judgment for the amount of the policy, the insurer, with insured's consent, caused the amount of such indebtedness to be credited on the judgment, did not affect insurer's right to appeal.

Appeal from Clay Circuit Court, Western District; *W. W. Bandy,* Judge; reversed.

*F. G. Taylor,* for appellant.

1.   The court should have directed a verdict in favor of the defendant, because the proof showed conclusively that the plaintiff never paid any part of the premium. 74 Ark. 507; 75 Ark. 25; 104 Ark. 288.

2.   Because plaintiff sold the land on which the insured property was located, contrary to the express provisions of the policy sued on.

3.   Because plaintiff failed to give notice and proof of loss as required by the terms of the policy. 156 S. W. 848; 108 Ark. 261; 87 Ark. 171.

4.   Instruction No. 2, given by the court on its own motion, was manifest error. It is an instruction as to a fact not in evidence. Art. 7, § 23, Constitution; 43 Ark. 289; 45 Ark. 165; 49 Ark. 165; 53 Ark. 383; 53 Ark. 244; 58 Ark. 108; *Id.* 504.

5.   There is no waiver of forfeiture here. The check given by plaintiff to Stephens was not paid when presented, and a notice from the home office to the effect that the premium note, due January, 1922, was unpaid, even if considered a demand for payment, would not change the result, for the policy was already forfeited. 150 Ark. 60; 156 Ark. 77.

*Oliver & Oliver,* for appellee.

Appellant has recognized the validity of the judgment and made payments thereon. The appeal should therefore be dismissed. 3 C. J. 669; 47 Pac. 835; 175

Pac. 204; 176 Pac. 241; 190 S. W. 468; 243 U. S. 273; 61
L. ed. 715; 171 Pac. 1110; 78 So. 574; 109 Ark. 548; 192
N. W. 250; 251 S. W. 841; 61 S. E. 80.

SMITH, J.  On September 19, 1921, appellee was the
owner of a forty-acre tract of land, on which there were
a barn and certain other buildings.  On the date men-
tioned the appellant insurance company issued to appel-
lee its policy of insurance, by which it insured said build-
ings and certain corn and hay and seed stored therein.
The policy specified the amount of insurance upon the
buildings and upon the agricultural products separately.
About the time the policy was issued and delivered appel-
lee sold the land, but he remained in possession of the
premises after the delivery of the deed.  He did not sell
the hay, etc., but it was all destroyed in a fire which con-
sumed the barn.

Suit was brought to recover the insurance on the
personal property, and the insurance company answered
and denied liability on three grounds:  (1), that the
premium had not been paid; (2), that the policy was can-
celed by the sale; (3), that no proof of loss was made
as required by the policy.

Appellee testified that Stephens, the company's
agent, applied to him to take out the policy sued on, but
he explained to Stephens that he did not, at the time,
have the money to pay the premium; that Stephens told
him it would be all right, and could be arranged by appel-
lee giving a check for $15 of the premium and a note for
the balance.  Stephens was advised that appellee did not
have sufficient money in the bank to pay the check at the
time it was drawn, but Stephens agreed to carry the
check as a cash payment for a few days, until appellee
had deposited in the bank against which the check was
drawn enough money to pay the check on presentation.
Appellee testified that Stephens told him he would remit
the company its portion of the premium, and that he
later told him that he had done so.  The application
showed a cash payment of $15, this being the amount of
the check.  The deposition of the company's service

manager at Memphis, Tenn., through whose hands the transaction passed and who acted for the company in the matter, was taken, and he was asked to attach the letter of Stephens to the company which accompanied the application, but it was not done, and no explanation of the failure to do so was made. It is insisted that, if this letter had been exhibited, it would have appeared that Stephens did, in fact, remit the premium to the company, less his agent's commission, as Stephens had told appellee he had done. Appellee further testified that he promised to pay the check on a designated Saturday, but the fire occurred the Friday preceding.

Stephens testified that he accepted the check as a cash payment, and presented it at the bank for payment, but payment was refused because appellee did not have sufficient funds in the bank, and that he called upon appellee to redeem the check, and he never at any time agreed to carry it for appellee, and he denied having remitted the company its portion of the premium. .

This issue of fact was submitted to the jury under instructions which, in effect, told the jury that no recovery could be had because of the failure to pay the premium unless the facts were found to be as stated by appellee. The company insists, however, that this issue should not have been submitted to the jury, and that a verdict should have been directed in its favor because the check had not, in fact, been paid, and the policy provided that no recovery could be had thereon if any loss occurred during the time any part of the premium was due and unpaid. Appellant cites several cases from this court in which this provision of a policy has been upheld. But, if appellee's version of the matter is accepted, the premium had been paid. The check was payment thereof. Stephens had authority to issue policies, to collect premiums, and to issue receipts therefor, and if he, in fact, accepted the check as a cash payment with an agreement to treat the same as cash for a definite time, there would have been no default in payment of the premium until appellee had failed to redeem the check, and espe-

cially is this true if Stephens did, in fact, remit to the company its part of the premium. *Home Life & Accident Co.* v. *Haskins,* 156 Ark. 77; *Robnett* v. *Cotton States Life Ins. Co.,* 148 Ark. 199; *Hutchins* v. *Globe Life Ins. Co.,* 126 Ark. 360.

Upon the proposition that the policy was canceled by the sale of the land, the testimony is as follows: Appellee testified that, when he made the sale, he advised Stephens of that fact, and stated to him that, if the policy was not good as to the unsold personal property, he wanted the policy rewritten to cover the personal property. Stephens told appellee that one of the company's general agents was in town, and the matter would be submitted to him. This was done, and the general agent was told by Stephens that the premium had been paid in cash and by a note for a year, and the general agent advised, and Stephens concurred in the view, that the policy was in effect as to the personal property, inasmuch as appellee was in possession of it, but this agent and Stephens told appellee that, if they found they were mistaken, a new policy would be issued covering the personal property, and appellee heard nothing further about the new policy.

If this testimony is true—and its truth was submitted to the jury upon conflicting testimony—the company will be held to have waived the provision of the policy forfeiting it in case of sale. There had been no sale of the property on which appellee sought to collect the insurance, and the conduct of the agent who issued the policy, and who had the authority to reissue one on the personal property alone, in view of the jury's verdict, constituted a waiver.

This court had held that the requirements of a fire insurance policy in regard to the unconditional ownership and change of ownership of the insured property may be waived by the company, and will be held to be waived when its agent who issued the policy knew, at the time of its issuance, that the insured's interest was not sole and unconditional. *Georgia Home Ins. Co.* v. *Bennett,*

134 Ark. 52; *Westchester Fire Ins. Co. v. Smith,* 128 Ark. 92; *Queen of Ark. Ins. Co. v. Taylor,* 100 Ark. 9; *Hartford Fire Ins. Co. v. Enoch,* 79 Ark. 475; *Security Mutual Ins. Co. v. Woodson,* 79 Ark. 266.

So here the failure of Stephens to reissue a policy covering the unsold personal property only, because that property was covered by the outstanding policy, is, in effect, a waiver of the forfeiture which' the company might otherwise have asserted.

On the question of the proof of loss, appellee testified that, immediately after the fire, he notified Stephens of the loss, who stated to him that he would later notify the company of the loss, and still later that he had notified the company of the loss. This statement Stephens denied. It is not contended that proof of loss was otherwise made.

We have held that a local agent, such as Stephens was shown to be, has authority to waive proof of loss. *National Union Fire Ins. Co. v. Crabtree,* 151 Ark. 561; *Citizens' Fire Ins. Co. v. Lord,* 100 Ark. 212.

But the case was not submitted to the jury on the question of the notice of the loss to Stephens and a waiver of proof by him. That question was eliminated from the case by the court on another theory, which was presented in an instruction numbered 2, reading as follows: "2. The court tells you now that the first objection is not well taken; that is, as to the proof of loss, for the reason that the proof discloses that the defendant, after the loss by fire occurred, they sent an adjuster here to adjust the loss, which was a waiver of that defense, and for that reason that defense, so far as this suit is concerned, goes out of the case."

The testimony shows that an adjuster came to Corning, where Stephens resided and maintained his office, and examined the loss, and concluded the company was not liable. Appellee was not advised of this visit, and first learned of it during the trial. He could not therefore have been induced by this visit to refrain from making proof of loss, as the policy required him to do.

If an authorized agent, within the time specified for making proof of loss under the policy, enters into negotiations for the adjustment of the loss, or otherwise treats this requirement of the policy as having been complied with, or as waived, then the company cannot thereafter defend upon the ground that a proof of loss was not furnished. *Springfield Fire & Marine Ins. Co.* v. *State,* 152 Ark. 79; *National Union Fire Ins. Co.* v. *Crabtree,* 151 Ark. 561.

It was not even made to appear that the adjuster visited Corning within the time during which proof of loss might have been furnished. But this investigation would not have been a waiver, even though it had been made within the time specified for making proof of loss. This provision of the policy is waived only when some authorized agent of the insurance company leads the insured to believe that a proof of loss will not be required, or to believe that the notice given or the action taken by the insured will be treated as a compliance with this requirement. The investigation by this adjuster was not a waiver of the requirement that proof of loss be made. *Tero Petroff & Co.* v. *Equity Fire Ins. Co.,* 167 N. W. 660; *Liverpool, London & Globe Insurance Co.* v. *Sorsby,* 60 Miss. 312; *People's Bank* v. *Ætna Ins. Co.,* 74 Fed. 507; *Bakhaus* v. *Germania Fire Ins. Co.,* 176 Fed. 879.

The question of the failure to make proof of loss as required by the policy was therefore improperly withdrawn from the jury.

Appellee insists that appellant has recognized the validity of the judgment and has accepted a benefit under it, and cannot therefore appeal. The basis of this contention is that, after the rendition of the judgment, appellant caused, with appellee's consent, to be credited thereon the amount of the unpaid check and the unpaid note. This, however, does not affect the right to appeal. Under any view appellant was entitled to have this done. Certainly, appellee could not collect the insurance without paying the premium, and the effect of the credits on

the judgment was to allow the company credit for the premium, without the payment of which the entire policy would have been void.

For the error in giving instruction numbered 2, and in failing to submit to the jury the question whether proof of loss was waived, the judgment will be reversed, and the cause remanded for a new trial.